**JOHN L. BURRIS (SBN #69888)**
**ADANTE D. POINTER (SBN #236229)**
**LAW OFFICES OF JOHN L. BURRIS**
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:   (510) 839-5200
Facsimile:    (510) 839-3882
Email: john.burris@johnburrislaw.com
         adante.pointer@johnburrislaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMILLE WEISHAAR, individually and as Successor-in-Interest to Decedent EZEKIEL FOSTER; | Case No.: C 14-01352 LB |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | |
| COUNTY OF NAPA, a municipal corporation; OFFICER TROY DUNCAN in his individual and official capacity as a Correctional Officer for COUNTY OF NAPA; M. JOHNSON, in her individual and official capacity as Registered Nurse for the COUNTY OF NAPA and DOES 1-30, inclusive, | |
| Defendants. | |

### INTRODUCTION

This case arises out of the untimely death of Mr. Ezekiel Foster, who died while in custody at Napa County Detention Facility and under the supervision of Napa County Detention Facility staff. The County's NCDC staff including, but not limited to, its correctional officers and medical service providers had a duty to ensure Mr. Foster's personal safety and medical needs were met while he was in custody.  Nevertheless, NCDC staff breached their duty by ignoring Mr. Foster's overt display of

psychiatric distress and well-documented history of psychiatric problems; omitting his suicidal ideations and prior suicidal attempts during his psychiatric evaluation; refusing to provide him with any psychiatric medication; placing him in a jail cell where he was not closely monitored and permitting him to have access to things that could easily be used to carry out his expressed desire to kill himself.  Foreseeably, Mr. Foster committed suicide within 24 hours of being incarcerated at NCDC leaving behind his grieving wife, Ms. Camille Weishaar.

## PARTIES

1. Plaintiff herein, CAMILLE WEISHAAR, is, and at all times herein mentioned was a citizen of the United States.  Plaintiff is the surviving wife of Decedent, EZEKIEL FOSTER, and is the sole Successor-in-Interest to him.

2. Defendant COUNTY OF NAPA ("COUNTY") is a governmental entity, duly organized and existing under the laws of the State of California.  COUNTY operates the NAPA COUNTY DEPARTMENT OF CORRECTIONS ("NCDC").

3. Defendant TROY DUNCAN ("Officer Duncan") is and at all times herein mentioned being sued in his individual and official capacity as a Correctional Officer for Defendant COUNTY.

4. Defendant M. JOHNSON ("Nurse Johnson") is at all times herein mentioned being sued in her individual and official capacity as a Registered Nurse for Defendant COUNTY.

5. Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 15, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant so named was employed by Defendant COUNTY at the time of the conduct alleged herein.  Plaintiff alleges Defendants DOES 1 through 15, and each of them were negligent and deliberately indifferent to EZEKIAL FOSTER'S medical and mental health needs and safety, failed to provide psychiatric care to him or take other measures to prevent him from attempting suicide, violated his civil rights, wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct.  Plaintiff further alleges that the DOE Defendants violated Plaintiff's Fourteenth Amendment rights to familial association and companionship and caused the wrongful death of EZEKIAL FOSTER.  Plaintiff will amend their complaint to state the names and capacities of DOES 1 through 15, inclusive, when they have been ascertained.

6.     Plaintiff is ignorant of the true names and capacities of Defendants DOES 16 through 30, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant so named was employed by Defendant COUNTY at the time of the conduct alleged herein.  Plaintiff alleges that each of Defendants DOES 16-30 were responsible for the training, supervision and/or conduct of the Jail employees and/or agents involved in the conduct alleged herein.  Plaintiff alleges that each of Defendants DOES 16 through 30 was also responsible for and caused the acts and injuries alleged herein.  Plaintiffs will amend her complaint to state the names and capacities of DOES 16 through 30, inclusive, when they have been ascertained.

7.     For state law causes of action, Plaintiffs are required to comply with statutory tort claim requirements. Plaintiff has complied with all applicable requirements.

## PRELIMINARY ALLEGATIONS

8.     The COUNTY is a public entity and is sued under Title 42 U.S.C. § 1983 for violations of the Fourteenth Amendments of the United States Constitution, California state law, the California Tort Claims Act, and the Government Code for the acts and omissions of COUNTY Department of Corrections  Officer DUNCAN; Nurse JOHNSON and DOES 1-30, and each of them, who at the time they caused Plaintiff's and Decedent FOSTER'S injuries, damages and death were duly appointed, qualified and acting officers, employees, and/or agents of COUNTY and acting within the course and scope of their employment and/or agency.  In engaging in the conduct described herein, COUNTY Correctional Officer DUNCAN; Nurse JOHNSON and DOES 1-15, inclusive, exceeded the authority vested in them as public employees under the United States and California Constitutions and as Correctional Officers employed by Defendant COUNTY.

9.     Plaintiff alleges that the conduct of each Defendant deprived Decedent EZEKIAL FOSTER of his constitutional right to life, his constitutional right to medical and mental health care for his serious but treatable medical and mental health needs, as well as custodial care and supervision, and caused Decedent EZEKIAL FOSTER to suffer grievous harm and physical, psychological, and mental injuries prior to his death, and ultimately caused his death while he was in the custody of Defendants.

10.    Each of the Defendants caused and is responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and

FIRST AMENDED COMPLAINT

procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.

11. Whenever and wherever reference is made in this Complaint to any act by Defendants COUNTY OF NAPA Correctional Officers; staff members and/or DOES 1-30, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant and DOE Defendants individually, jointly or severally.

## STATEMENT OF FACTS

12. On October 31, 2012, Decedent, 32 year-old Mr. Ezekiel Foster was arrested by the City of American Canyon Police Department on charges of violating his probation. Five Officers brought Mr. Foster into custody and during that encounter the Officers placed him in a WRAP device. The Officers then took him to a nearby hospital so he could be treated for his physical injuries.

13. After Mr. Foster was treated and released, the Officers took him to the Napa County Department of Corrections Jail. During the intake and/or booking process, American Canyon Police Department Officers filled out a form titled 'Napa County Department of Corrections Agency Advisory Form' which was provided to a yet-to-be-identified Napa County Department of Corrections 'Receiving Officer'.

14. The 'Agency Advisory Form' shows the arresting officers advised the Jail's staff that Mr. Foster fought with the arresting officers; was brought to the hospital in a WRAP device; was observed using assaultive behavior; displayed physical injuries; and made suicidal comments by stating to the arresting officers that "he wished he would die." The 'Agency Advisory Form' was then reviewed and signed by Correctional Medical Staff Registered Nurse M. Johnson. Given Nurse Johnson signed the 'Agency Advisory Form' she knew Mr. Foster made suicidal comments just prior to being booked into the jail.

15. During his booking interview, Mr. Foster notified a yet-to-be-identified Jail Correctional Officer that he was under a doctor's care for being bipolar; had a history of psychiatric problems; was taking psychiatric medication and had previously attempted suicide. This information was documented on a form titled 'Napa County Department of Corrections Medical Pre-Screening

Questionnaire.' Given Nurse Johnson, Mr. Foster and the Correctional Officer signed the 'Medical Pre-screening Form' both Nurse Johnson and the Correctional Officer knew Mr. Foster had a history of attempting to commit suicide.

16. During the booking process, inmate William Hauff was in the booking area with Mr. Foster. When he was interviewed after the incident, he told County investigators that he noticed Mr. Foster was visibly upset.

17. Within ten minutes of his initial booking interview, Registered Nurse, M. Johnson completed a form titled 'Nursing Assessment of Psychiatric and Suicidal Inmate.' Plaintiff is informed and believes and upon such information and belief alleges that Nurse Johnson was tasked with evaluating Mr. Foster's mental health, in order to assist in determining the proper housing assignment for him.

18. Despite Mr. Foster displaying obvious signs of mental/emotional distress and his documented history of suicidal ideation and attempts Nurse Johnson failed to document these facts on several forms she prepared and/or reviewed during the course of assessing Mr. Foster.  For example, on the 'Nursing Assessment of Psychiatric and Suicidal Inmate' form Nurse Johnson checked a box indicating Mr. Foster was not visibly upset, despite a fellow inmate noticing Mr. Foster's displaying obvious signs of emotional distress just prior to her assessment.  She also checked a box indicating he did not have a history of suicidal ideation or suicide attempts, despite that information being documented a few minutes prior in the 'Agency Advisory Form' and 'Medical Pre-Screening Form,' both of which were signed by Nurse Johnson herself. Information pertaining to Mr. Foster's history of suicidal ideation and suicidal attempts was also readily available from medical records associated with Mr. Foster's previous terms of incarceration at the County's Department of Corrections Jail. On the 'Nursing Assessment of Psychiatric and Suicidal Inmate' form Nurse Johnson indicated Mr. Foster was taking medication for his bipolar disorder and anxiety prior to his incarceration, which she apparently verified.  Moreover, Nurse Johnson referred Mr. Foster to a Jail doctor for further diagnosis and to be prescribed medication to address his mental illness.

19. For unknown reasons, Nurse Johnson neglected to reconcile any of the glaring contradictions between her assessment of Mr. Foster as documented in the 'Nursing Assessment of Psychiatric and Suicidal Inmate' form and his documented medical history; the 'Medical Pre-Screening Form;' and/or the 'Agency Advisory Form,' which she signed ten minutes prior to completing the 'Nursing Assessment of Psychiatric and Suicidal Inmate' form.

FIRST AMENDED COMPLAINT

20.     Despite Mr. Foster displaying open and obvious signs of being in acute psychiatric distress he was not given any psychiatric medication or services, placed on suicide watch or housed in an appropriate housing unit where he would be more closely monitored or prevented from having access to things that could harm himself or others. Instead, he was placed in a cell with two other inmates and provided access to items and materials he could readily use to harm himself. Plaintiff is informed and believes and upon such information and belief alleges that Mr. Foster's documentation was submitted to a yet-to-be-identified Housing Coordinator, who failed to correctly house Mr. Foster, based on the erroneous information provided by Nurse Johnson.

21.     Plaintiff is informed and believes and upon such information and belief allege that Mr. Foster was then assigned to the Special Housing Unit; designed to segregate him from the general jail population due to his criminal history, instead of sending him to a unit designed to treat and/or observe inmates with mental illness and/or at risk of self-harm.

22.     Mr. Foster was placed into a cell with Mr. William Hauff and one other inmate. Mr. Hauff witnessed Mr. Foster crying off and on all day, in addition to asking a nurse and corrections officers for his psychiatric medications.

23.     On November 1, 2012, at 2:30 a.m., Dr. Fithian ordered anti-anxiety medications for Mr. Foster. However, Dr. Fithian failed to order Mr. Foster's verified medications for his well-documented bipolar condition, despite Mr. Foster being provided this medication during previous incarcerations and repeatedly requesting it during his current term of incarceration.

24.     According to Correctional Officer Troy Duncan; who was assigned to supervise the unit, Mr. Foster continued to exhibit signs of emotional instability. For example, Officer Duncan noted Mr. Foster cried on and off throughout the day and visibly appeared "down." He also requested to receive psychiatric meds but was not given any.

25.     Unfortunately, Mr. Foster continued to emotionally implode. Later that day, at approximately 2:20 p.m., Mr. Foster's roommates awoke to find him elevated off the ground in a seated position with a bed sheet wrapped around his neck. Mr. Foster was unresponsive and never regained consciousness despite efforts by Jail staff to perform CPR and other life saving measures.

26.     After Mr. Foster's death, Officer Kevin Skillings recalled being aware of Mr. Foster's prior incarceration where he wrote notes about the 'pros and cons of living,' indicating that Mr. Foster's suicidal thoughts were well-known amongst Jail staff.

27. Plaintiff alleges that Decedent's death was the result of Officer Duncan; Nurse Johnson and yet-to-be-identified NCDC staff essentially turning a blind eye and/or being deliberately indifferent and/or willfully misrepresenting Mr. Foster's condition. Plaintiff alleges that COUNTY, by and through its personnel, owed Decedent and Plaintiff a duty of care to ensure the Decedent was supervised in a manner sufficient to prevent him from committing suicide.

28. Plaintiff further alleges on information and belief that COUNTY by and through its agents and employees, were on notice of their special duty to Decedent through their observations, decedent's booking and/or intake examination and his prior custody records.

29. Plaintiff further alleges that Decedent's suicide was a foreseeable harm resulting from defendants' failure to exercise the special duty of care owed to Decedent, both by the failure to adequately supervise Decedent and by leaving Decedent in a cell with obvious means to commit suicide by hanging himself with a bed sheet.

30. The above-described negligence by Defendants was the factual and proximate cause of Decedent's death and Plaintiff's damages.

31. Defendant COUNTY, by and through its supervisory employees and agents and DOES 26-30, inclusive, has and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its officers and medical employees so as to avoid unreasonable risk of harm to citizens. With deliberate indifference COUNTY and DOES 16-30, inclusive, failed to take necessary, proper, or adequate measures in order to prevent the violation of Decedent's and Plaintiff's rights, the suffering and death of Decedent, and injuries and damages to Plaintiff. COUNTY and DOES 16-30, inclusive, breached their duty of care to citizens in that they failed to adequately train, supervise and discipline their medical service providers/employees, in exercising a professional standard of care of suicidal patients; correctional officers, including Defendant officer DUNCAN; Nurse JOHNSON and DOES 1-15, inclusive, in the proper detention, supervision and assessment of inmates at NCDC. This lack of adequate supervisorial training demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying with deliberate indifference the continuing negligent supervision of inmates, including Decedent, by correctional officers and medical service providers DOES 1-30, inclusive, employed by Defendant COUNTY.

FIRST AMENDED COMPLAINT

**DAMAGES**

32. Plaintiff was physically, mentally, and emotionally injured and damaged as a proximate result of Decedent's wrongful death, including but not limited to: Plaintiff's loss of Decedent's society, comfort, protection, companionship, love, affection, solace, and moral support.

33. Plaintiff as successor in interest is entitled to recover wrongful death damages pursuant to C.C.P. Sections 377.60 and 377.61 and Probate Code Section 6402(b). Additionally, Plaintiff is entitled to the reasonable value of funeral and burial expenses pursuant to C.C.P. Sections 377.60 and 377.61.

34. As a further direct and proximate result of Defendants' negligence, Plaintiff has been deprived of Decedent's support and future support.

35. Plaintiff found it necessary to engage the services of private counsel to vindicate the Decedent and Plaintiff's rights under the law. Plaintiff is therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of Decedent's civil rights, and Plaintiff's civil rights.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. Section 1983)**
**(Violation of Plaintiff's Civil Rights To Familial Relationship)**
**(Plaintiff Against Defendants DUNCAN; JOHNSON and DOES 1-30)**

36. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 35 of this Complaint.

37. Defendants, acting under color of state law, deprived Plaintiff without due process of law of her right to a familial relationship with Decedent by failing to supervise Decedent with deliberate indifference in their failure of supervision, in violation of rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution. As a result, Plaintiff, suffered damages as alleged in this Complaint.

38. In doing the foregoing wrongful acts, defendants acted in reckless and callous disregard for the constitutional rights of Plaintiff and Decedent. The wrongful acts, and each of them, were willful and deliberately indifferent to Plaintiff's civil rights.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. section 1983)**
**(Deliberate Indifference to Decedent's Medical Needs)**
**(Plaintiff, as Successor-in-Interest to Decedent Against Defendants DUNCAN; JOHNSON and DOES 1-30)**

39. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 38 of this Complaint.

40. In doing the acts complained of, Defendants, and each of them, acted under color of state law to deprive the Decedent of urgently needed medical care in violation of his rights, under the Due Process Clause of the Fourteenth Amendment, to receive necessary medical attention while incarcerated by Defendant COUNTY.

41. As a proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as set forth herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**(42 U.S.C. Section 1983)**
**Violation of Civil Right To Life and Security of Person**
**(Plaintiff, as Successor-in-Interest to Decedent Against Defendants DUNCAN; JOHNSON and DOES 1-30)**

42. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 41 of this Complaint.

43. Defendants acted under color of law by being deliberately indifferent to Decedent's medical needs and in failing to properly supervise Decedent, thereby depriving Plaintiff and Decedent of certain constitutionally protected rights, including, but not limited to:

    a.    not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendments to the United States Constitution;

    b.    The right to Equal Protection of the laws, as guaranteed by the Fourteenth Amendments to the United States Constitution;

44. As a proximate result of the foregoing wrongful acts of Defendants and the death of Decedent, Plaintiff has sustained, and will in the future sustain, pecuniary loss and other compensable injuries resulting from the loss of the society, comfort, attention, services, and support of the decedent.

45. Defendants acted under color of law in failing to reasonably supervise Decedent, were deliberately indifferent to Decedent's medical/psychiatric care, thereby depriving Plaintiff and the decedent of certain constitutionally protected rights, including, but not limited to:

46. As a further proximate result of the acts of Defendants, as alleged above, Decedent has lost the enjoyment of life.

46. As a further proximate result of the acts of Defendants, Decedent suffered general damages immediately prior to his death.

47. In doing the foregoing wrongful acts, defendants, and each of them, acted in reckless and callous disregard for the Constitutional rights of Plaintiff and the Decedent. The wrongful acts, as alleged herein, were willful and fraudulent.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### (*Monell* - 42 U.S.C. section 1983)
**(Plaintiff, as Successor-in-Interest to Decedent Against Defendants COUNTY and DOES 16-30)**

48. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 47 of this Complaint.

49. The aforementioned acts and/or omissions of the Defendants COUNTY and DOES 16-30 in being deliberatively indifferent to Decedent EZEKIAL FOSTER'S serious medical needs and safety and violating his civil rights were the direct and proximate result of customs, practices and policies of Defendant COUNTY and DOES 16 through 30, as alleged herein.

50. At all times herein mentioned, Defendants COUNTY and DOES 16 through 30 maintained a policy or de facto unconstitutional informal custom or practice of permitting, ignoring and condoning, NCDC personnel to delay in providing adequate mental health and medical assistance for the protection of the health or safety of inmates; failing to properly observe and treat inmates, including inadequate: intake and screening and evaluation, diagnosis, referral to mental health professionals, treatment plans, administration of delivery of medications, medical record keeping, staffing, communication between medical, mental health and custodial staff, housing, supervision, access to mental and medical health care, failure to supervise, lax supervision, failure to report, investigate, and reprimand Jail personnel wrongful conduct

51. Plaintiff alleges that Defendant COUNTY maintained a policy, custom or practice of failing to provide adequate staff in NCDC causing a failure to properly monitor the inmates.

52. Plaintiff alleges that Defendant COUNTY maintained a policy, custom or practice of failing to provide NCDC with adequate mental health personnel.

53. Each policy, custom or practice posed a substantial risk of serious harm to EZEKIAL FOSTER and Defendant COUNTY and DOES 16-30 knew, or should have known, its policy posed this risk.

54. Plaintiff is further informed and believes and thereon alleges that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants DUNCAN; JOHNSON and/or DOES 1-15, and/or each of them, Defendant COUNTY and DOES 16-30, and/or each of them, encouraged NCDC personnel to continue their course of deliberate indifference and caused this lack of training in NCDC personnel, resulting in the violation of the Plaintiffs' rights as alleged herein.

55. The aforementioned acts and/or omissions and/or deliberate indifference by high ranking NAPA COUNTY officials, including high ranking NCDC Supervisors and DOES 16-30, and each of them resulted in the deprivation of Plaintiff's constitutional rights. These customs, practices or policies were the legal cause of Plaintiff's injuries, and each individual Defendant acting in accord with this custom, policy or practice acted with deliberate indifference to the needs of persons such as EZEKIAL FOSTER, who was in the custody and care of Defendants.

56. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### (C.C.P. Section 377.60 and 377.61)
### Wrongful Death- Negligence
### (Plaintiff Against Defendants DUNCAN; JOHNSON and DOES 1-15)

57. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 56 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

58. Defendants DUNCAN; JOHNSON and DOES 1-15, inclusive and COUNTY by and through its agents and employees' negligent actions and/or negligent failure to act, as set forth hereinabove proximately caused the death of Decedent EZEKIAL FOSTER on November 1, 2012.

59. As an actual and proximate result of said Defendants' negligence, and the death of Decedent, Plaintiff has sustained pecuniary loss resulting from the loss of comfort, society, attention, services, and support of Decedent, in an amount according to proof at trial.

60. As a further actual and proximate result of said Defendants' negligence, Plaintiff has incurred funeral and burial expenses, in an amount according to proof at trial.

61. Pursuant to California C.C.P. Sections 377.60 and 377.61, Plaintiff has brought this action, and claim damages from, said defendants for the wrongful death of Decedent, and her resulting injuries and damages.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

### JURY DEMAND

62. Plaintiff hereby demands a jury trial in this action.

### PRAYER

WHEREFORE, plaintiff prays for relief, as follows:

1. For general damages in a sum according to proof;
2. For special damages in a sum according to proof;
3. For funeral and burial expenses according to proof;
4. For punitive damages against DUNCAN; JOHNSON and DOES 1-30 in a sum according to proof;
5. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;
6. For cost of suit herein incurred; and
7. For such other and further relief as the Court deems just and proper.

Dated: April 7, 2015

_____
ADANTE D. POINTER
LAW OFFICES OF JOHN L. BURRIS
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT